**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CAROLYN MURDOCK, et al.,          :
                                  :
        Plaintiffs,               :
                                  :
v.                                :        CIVIL ACTION NO.
                                  :        1:12-CV-01743-RWS
COBB COUNTY, GEORGIA, et          :
al.,                              :
                                  :
        Defendants.               :

## <u>ORDER</u>

This case comes before the Court on Defendants' Motion to Dismiss

Plaintiffs' Amended Complaint in Part ("Motion to Dismiss") [18].  After

reviewing the record, the Court enters the following Order.

### Background

This case arises out of a traffic stop and the subsequent shooting death of

Matthew Murdock ("Murdock").  The following facts are taken from Plaintiffs'

Amended Complaint [12] and, for purposes of Defendants' Motion to Dismiss,

are accepted as true.

On May 19, 2011, at approximately 11:25 p.m., Murdock was driving

home after working with a friend at an automotive repair shop.  (Am. Compl.,

Dkt. [12] ¶ 31.)  Lacking probable cause or reasonable suspicion that Murdock was engaged in criminal activity, Defendant Officer Kyle Solon ("Officer Solon"), an officer with the Cobb County Police Department, stopped Murdock's vehicle and detained him.  (Id. ¶¶ 20, 32.)  Officer Solon called for police backup and then approached Murdock and asked him for identification. (Id. ¶¶ 32, 33.)  Murdock complied with this request and also informed Officer Solon that he had been working with a friend in an automotive shop across the street.  (Id. ¶ 33.)  In response to a question from Officer Solon, Murdock stated that he did not have any weapons in his vehicle.  (Id. ¶ 34.)

As Officer Solon questioned Murdock, Defendant Sergeant G. L. Beasley ("Sergeant Beasley"), a Cobb County Sheriff's deputy, arrived on the scene to assist Officer Solon.  (Id. ¶ 34.)  Officer Solon asked Sergeant Beasley to detain Murdock while Officer Solon went to confer with Murdock's friend in the automotive shop.  (Id. ¶ 35.)  Sergeant Beasley approached Murdock's vehicle and asked him whether he had any weapons on his person or in his vehicle; Murdock again responded that he did not.  (Id. ¶¶ 37-38.)  Shortly thereafter, Defendant Officer Sean Henry ("Officer Henry"), an officer with the Cobb County Police Department, arrived on the scene.  (Id. ¶ 39.)  Sergeant Beasley

2

then asked Murdock to step out of his vehicle, and Murdock did so.  (Id. ¶¶ 39,

40.)  At this point one or more Defendants searched Murdock's vehicle.  (Id. ¶

41.)

According to Sergeant Beasley and Officer Solon, an altercation occurred

between Murdock and Sergeant Beasley.  (Id. ¶ 42.)  During the altercation,

Officer Henry drew his service weapon and fired two bullets at Murdock with

the express intent of striking him and causing grievous bodily harm.  (Id. ¶ 43.)

Both bullets struck Murdock in his back and lower abdomen or side, seriously

wounding him.  (Id. ¶ 45.)  After being struck by the bullets, Murdock yelled

out in pain and asked Officer Henry, "Why are you shooting me?"  (Id. ¶ 46.)

Murdock suffered for a period of time and ultimately died as a result of the

gunshot wounds.  (Id. ¶¶ 47-48.)  An autopsy report revealed that Murdock's

back was turned to Officer Henry at the time he was shot.  (Id. ¶ 57.)

Murdock was five feet and eight inches tall and 170 pounds at the time of

his death and unarmed.  (Id. ¶ 51.)  At least three Defendants, each of whom

was armed with some form of weapon, were in Murdock's immediate presence

at the time of the incident.  (Id. ¶ 49-50.)  At no time did Murdock threaten,

3

endanger, or provoke them or give them cause to believe he was dangerous.
(Id. ¶¶ 53-56.)

Following Murdock's death, Plaintiffs initiated this action, raising federal and state law claims against the following entity Defendants: (1) Cobb County, Georgia, (2) the Cobb County Police Department, and (3) the Cobb County Sheriff's Office; and the following individual Defendants: (1) Chief John R. Houser ("Chief Houser"), individually and in his official capacity as Chief of Police for Cobb County, Georgia; (2) Sheriff Neil Warren ("Sheriff Warren"), individually and in his official capacity as Sheriff of Cobb County, Georgia; (3) Officer Henry, individually and in his official capacity as an officer with the Cobb County Police Department; (4) Officer Solon, individually and in his official capacity as an officer with the Cobb County Police Department; and (5) Sergeant Beasley, individually and in his official capacity as a Sergeant with the Cobb County Sheriff's Office.  (Am. Compl., Dkt. [1].)

Against the foregoing Defendants, Plaintiffs assert the following claims for relief.  Pursuant to 42 U.S.C. § 1983, Plaintiffs raise claims for violation of due process under the Fourteenth Amendment and for unreasonable search and seizure under the Fourth Amendment.  (Am. Compl., Dkt. [12] ¶¶ 106-23.)

4

Plaintiffs also raise claims under the provisions of the Georgia Constitution pertaining to due process; equal protection; citizenship rights; search and seizure; and rights to benefit of counsel, accusation, list of witnesses, and compulsory process.  (Id. ¶¶ 124-40.)  Finally, Plaintiffs raise claims under Georgia tort law for assault, battery, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, and gross negligence.  (Id. ¶¶ 141-276.)

Defendants now move to dismiss the Amended Complaint, in part, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) .  (See generally Dkt. [18].)  Specifically, Defendants move to dismiss all claims raised in the Amended Complaint except "those against Defendant Henry for the use of force against [Murdock]."  (Id. at 2.)  The Court sets out the legal standard governing Defendants' Motion to Dismiss before considering the motion on the merits.

## Discussion

## I.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual

5

allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

6

II.    **Analysis**

    A.    <u>Claims against the Cobb County Police Department and Cobb County Sheriff's Office</u>

Defendants move to dismiss all claims against the Cobb County Police Department and Sheriff's Office on grounds that these entities are not capable of being sued. The Court agrees. The Eleventh Circuit Court of Appeals has recognized that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit . . . ." <u>Dean v. Barber</u>, 951 F.2d 1210, 1214 (11th Cir. 1992) (citations omitted). Thus, for example, the Eleventh Circuit has held that the DeKalb County Police Department was not a legal entity subject to suit under section 1983. <u>Lovelace v. Dekalb Central Probation</u>, 144 F. App'x 793, 795 (11th Cir. 2005). <u>See also</u> <u>Shelby v. City of Atlanta</u>, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984) ("The [City of Atlanta Police] Department is an integral part of the City of Atlanta government and is merely the vehicle through which the City government fulfills its policing functions. For this reason the Department is not an entity subject to suit . . . ."). Defendants Cobb County Police Department and Cobb County Sheriff's Department are **DISMISSED**.

7

B.     Section 1983 claims against Sheriff Warren and Sergeant Beasley in their official capacities

Defendants move to dismiss Plaintiffs' section 1983 claims against

Sheriff Warren in his official capacity on grounds of Eleventh Amendment

sovereign immunity.  Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must

allege:  "(1) that the act or omission deprived plaintiff of a right, privilege or

immunity secured by the Constitution or laws of the United States, and (2) that

the act or omission was done by a person acting under color of law."  Marshall

Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th  Cir.

1993) (emphasis added) (internal quotes and citation omitted).

The United States Supreme Court has held that "neither a State nor its

officials acting in their official capacities are 'persons' under § 1983."  Will v.

Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  On the contrary, states

8

and their officials, acting in official capacities, are immune from suit under section 1983 pursuant to the Eleventh Amendment, which, absent congressional abrogation,[1] "protects a State from being sued in federal court without the State's consent."  Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Eleventh Amendment immunity from suit in federal court applies not only when the state itself is sued, but also when an "arm of the state" is sued.  Id.

With respect to Plaintiffs' section 1983 official capacity claims, the Court finds that Sheriff Warren is an "arm of the state."  The Eleventh Circuit Court of Appeals held in Grech v. Clayton County that sheriffs are state rather than county policymakers "for [their] law enforcement conduct and . . . the training and supervision of [their] employees in that regard."  335 F.3d 1326, 1348 (11th Cir. 2003).  In reaching this conclusion, the Grech court noted that "under Georgia law, counties lack authority and control over sheriffs' law enforcement functions."  Id. at 1332.  The court continued,

> In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement functions. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and

---

[1] Congress did not abrogate Eleventh Amendment immunity for claims brought pursuant to section 1983. Quern v. Jordan , 440 U.S. 332, 338 (1979).

policies.  Counties also have no role in the training or supervision
of the sheriffs' deputies.

Id. at 1336.

Thus, as an "arm of the state," Sheriff Warren, in his official capacity, is

entitled to Eleventh Amendment immunity from Plaintiffs' section 1983 claims.

Moreover, Sergeant Beasley, as an employee of the sheriff, is entitled to share

in that immunity for purposes of Plaintiffs' section 1983 official capacity

claims.  Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007) (holding that

sheriff's deputies, "as employees of the sheriff," share in the sheriff's Eleventh

Amendment immunity when sued in their official capacities); Scott v. Brown,

No. 1:11-cv-1811-TWT-JFK, 2012 WL 529983, at *3 (N.D. Ga. Jan. 26, 2012)

("[P]ersons employed by the sheriff to perform his functions, if sued in their

official capacities, are entitled to the same Eleventh Amendment immunity

accorded the sheriff for those functions.").  Defendants' Motion to Dismiss

therefore is **GRANTED** as to Plaintiffs' section 1983 claims against Sheriff

Warren and Sergeant Beasley in their official capacities.

> C.    Section 1983 claims against Cobb County and Chief Houser and
>       Officer Solon in their official capacities

10

It is well-settled that "a municipality cannot be held liable under [section] 1983 on a <u>respondeat</u> <u>superior</u> theory." <u>Monell v. Dep't of Social Services of New York</u>, 436 U.S. 658, 691 (1978). On the contrary, local governing bodies, such as counties, can be sued under section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." <u>Id.</u> at 690-91. The same standard applies to local officials. <u>See</u> <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1221 (11th Cir. 2005) ("When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom."); <u>id.</u> at 1221 n.8 (noting that a suit against a local government official is the same as a suit against the municipality).

"The Supreme Court has defined the word 'custom' to include 'persistent and wide-spread . . . practices,' 'permanent and well settled' practices, and 'deeply embedded traditional ways of carrying out policy.'" <u>Fundiller v. City</u>

11

of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985) (citation omitted). "Although not necessarily adopted by a person or body with rulemaking authority, customs can become so settled and permanent as to have the force of law." Id. (citing Monell, 436 U.S. at 690-91). "To have this effect, the custom must be 'created' by those whose 'edicts or acts may fairly be said to represent official policy." Id. (citing Monell, 436 U.S. at 694).

Defendants contend that Plaintiffs have failed to allege the existence of an official government policy or custom so as to state a section 1983 claim against Cobb County (or Chief Houser or Officer Solon in their official capacities). Plaintiffs, on the other hand, disagree, arguing they have alleged a "custom, pattern and practice . . . that allows officers to ignore written policies and receive no retribution or punishment for violating those policies by hiding behind the 'blue shield.'" (Pls.' Resp. & Br. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n Br."), Dkt. [20] (citing Am. Compl., Dkt. [12] ¶¶ 74-84, 92, 93, 95, & 96).)

To show this policy or custom, Plaintiffs allege that no criminal charges were brought against the individual Defendants following Murdock's death and that an internal affairs investigation conducted by the Cobb County Police

Department, and approved by Chief Houser, cleared Officer Henry of any misconduct or violations of law. (Am. Compl., Dkt. [12] ¶¶ 74-76.) Plaintiffs further allege that Chief Houser knew or should have known that prior to the incident alleged in the Amended Complaint, Officer Henry had been the subject of five prior citizen complaints and four internal affairs investigations and had been reprimanded for "incompetence" in 2001, while he served as an officer with the Plain City Police Department in Plain City, Ohio. (Id. ¶¶ 79-80.) Although Chief Houser knew or should have known the foregoing facts, Chief Houser hired Officer Henry, retained him on the police force, furnished him with a firearm, and placed him on active police duty. (Id. ¶¶ 81-83.) Plaintiffs further allege that Chief Houser and the Cobb County Police Department then failed to adequately supervise and train Officer Henry on the standards and procedures for detaining citizens and using deadly force. (Id. ¶¶ 83-84, 92.)

The Court finds the foregoing allegations sufficient, at the motion to dismiss stage of the litigation, to establish an informal County policy or custom that is actionable under section 1983. The Eleventh Circuit Court of Appeals has held, "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if

the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct."  Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987).  For example, in Depew v. City of St. Mary's, the plaintiffs filed an action against the city to recover for the alleged unlawful use of force by police officers, arguing that the city was liable under section 1983 because of its failure to discipline city police officers in the face of known misconduct.  787 F.2d 1496 (11th Cir. 1986).  The court held:

> [W]hile the city provided rules and regulations for the operation of its police department, these rules were violated on numerous occasions.  The city, however, failed to rectify the situation.  The evidence revealed several incidents involving the use of unreasonable and excessive force by police officers.  Therefore, the city had knowledge of improper police conduct, but failed to take proper remedial action.  The continued failure of the city to prevent known constitutional violations by its police officers is precisely the type of informal policy or custom that is actionable under section 1983.

Id. at 1499.

At this stage in the litigation, Plaintiffs' allegations are sufficient to establish that Cobb County knew of Officer Henry's misconduct and failed to take any remedial action.  Plaintiffs thus have alleged an informal policy or

custom that is actionable under section 1983.[2]  Accordingly, Defendants'

Motion to Dismiss is **DENIED** as to Plaintiffs' section 1983 claims against

Cobb County and its officials (Chief Houser and Officer Solon) in their official

capacities.

     D.     <u>Section 1983 claims against Sheriff Warren and Chief Houser (the "supervisory officials") in their individual capacities</u>

Defendants move to dismiss Plaintiffs' section 1983 claims against

Sheriff Warren and Chief Houser in their individual capacities on grounds that

Plaintiffs have failed to allege sufficient facts to state a claim for supervisory

liability.  "The standard by which a supervisor is held liable in her individual

capacity for the actions of a subordinate is extremely rigorous." <u>Mann v. Taser</u>

<u>Int'l, Inc.</u>, 588 F.3d 1291, 1308 (11th Cir. 2009) (internal quotes and citation

omitted).  "Supervisors can be held personally liable when either (1) the

---

[2] The Court notes the holding of <u>Brooks</u> 813 F.2d at 1193-94:  "Quite simply, there is no evidence that city officials were aware of past police misconduct. . . . Brooks never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity."  At this stage in the litigation, however, the Court accepts the facts alleged in the Amended Complaint as true and views them in the light most favorable to Plaintiff; the Court need not consider, for example, whether the past complaints against Officer Henry had merit. The allegations that Officer Henry had been declared "incompetent" in the past and had been the subject of several internal affairs investigations and multiple citizens complaints are sufficient, for purposes of Defendants' Motion to Dismiss, to establish an informal policy or custom actionable under section 1983.

supervisor personally participates in the alleged constitutional violation, or (2)

there is a causal connection between the actions of the supervisor and the

alleged constitutional violation." Id.  A causal connection can be established

(1) "when a history of widespread abuse puts the reasonable supervisor on

notice of the need to correct the alleged deprivation, and he fails to do so," or

(2) "when a supervisor's custom or policy results in deliberate indifference to

constitutional rights," or (3) "when facts support an inference that the

supervisor directed the subordinates to act unlawfully or knew that the

subordinates would act unlawfully and failed to stop them from doing so."

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotes and

citations omitted).[3]

---

[3] The "central tenet" in a claim for supervisory liability is, of course, an underlying constitutional violation. Mann, 588 F.3d at 1308.  Thus, if a plaintiff's underlying section 1983 claims fail, claims under a theory of supervisory liability necessarily will fail. Id. ("Because we conclude that Plaintiff's constitutional rights were not violated . . . Plaintiff cannot maintain a 1983 action for supervisory liability . . . for failure to train.") (citing Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005)).

   Defendants do not move to dismiss Plaintiffs' section 1983 claims against Officer Henry, the Defendant who allegedly shot and killed Murdock.  Thus, the Court assumes, without deciding, that Plaintiffs have stated a section 1983 claim against Officer Henry for purposes of considering their claims against Chief Warren and Sheriff Houser under theories of supervisory liability.

16

Plaintiffs' theory of liability in this case appears to be that Chief Houser and Sheriff Warren were deliberately indifferent to the constitutional rights of Murdock and others—as evidenced by, e.g., their failure to train and supervise Officer Henry—and/or were aware of Officer Henry's history of abuse, which they failed to correct.  As stated in section C., <u>supra</u>, Plaintiff alleges that Chief Houser knew or should have known that, prior to the incident, Officer Henry had been the subject of five citizen complaints and four internal affairs investigations and had been reprimanded for "incompetence" in 2001, while serving as a police officer with the Plain City Police Department in Plain City, Ohio.  (Dkt. [12] ¶¶ 79, 80.)  Nonetheless, an internal affairs investigation conducted by the Cobb County Police Department and approved by Chief Houser cleared Officer Henry of any wrongdoing in connection with the incident.  (<u>Id.</u> ¶¶ 75, 76.)  Plaintiff further alleges the following:

- Adequate vetting and scrutiny of Defendant Officer Henry's background would lead a reasonable policy maker to conclude that the obvious consequences of the decision to hire and retain Defendant Officer Henry would be a deprivation of another's constitutional rights.  (<u>Id.</u> ¶ 81.)

- The hiring and retention of Defendant Officer Henry was done with deliberate indifference to . . . [Murdock]'s rights.  (<u>Id.</u> ¶ 82.)

17

- Defendant Chief Houser and the Cobb County Police Department furnished the "incompetent" Defendant Officer Henry with the firearm that killed [Murdock] and then placed the "incompetent" Defendant Officer Henry into active police duty amongst the population and egregiously and shockingly failed to adequately and properly supervise and train Defendant Officer Henry, while and despite knowing of Defendant Officer Henry's record of "incompetence."  (Id. ¶ 83.)

- The negligent supervision [and] training of Defendant Officer Henry was done with deliberate and wanton carelessness and with conscious disregard and indifference for [Murdock]'s body, safety, life, and rights as well as for the safety and rights of the citizenry. (Id. ¶ 84.)

(See also Pls.' Opp'n Br., Dkt. [20] at 12 ("Defendants Sheriff Warren [and] Police Chief Houser . . . failed to bring criminal charges against the Defendant Actors and affirmatively concluded that the Defendant Actors did nothing wrong, thereby ratifying the Defendant Actors' actions. . . .  Taking Plaintiffs' allegations as true, there exists an unwritten policy, pattern or practice implemented by Houser and Warren . . . that was deliberately indifferent to [Murdock] and those like him.") (citing Am. Compl., Dkt. [12] ¶¶ 74-84-, 92, 93, 95, & 96).)  The Court considers whether these allegations are sufficient to state a claim against Chief Houser and/or Sheriff Warren.

18

### 1.   Chief Houser

The Court finds the foregoing allegations sufficient to state a claim against Chief Houser in his individual capacity.  Taking the facts alleged as true, Chief Houser knew (or reasonably should have known) that Officer Henry previously had been found "incompetent" as a police officer and was the subject of multiple complaints by both the citizenry and the Cobb County Police Department.  Despite this knowledge, Chief Houser retained Officer Henry on the police force, furnished him with a firearm, and placed him on active police duty.  These allegations are sufficient at the motion to dismiss stage to show that Chief Houser was aware of Officer Henry's problematic history and yet failed to take steps to protect the public against him.

The allegations of the Amended Complaint are also sufficient at the motion to dismiss stage to state a claim against Chief Houser on a theory of deliberate indifference.  In particular, Plaintiffs allege that Chief Houser failed to adequately train and supervise Officer Henry, despite his knowledge of Officer Henry's poor record.  See Belcher v. City of Foley, 30 F.3d 1390, 1397-98 (11th Cir. 1994) ("Failure to train can amount to deliberate indifference when the need for more or different training is obvious . . . such as when there

exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures . . . and when the failure to train is likely to result in the violation of a constitutional right.") (internal citations omitted). Accepting the facts alleged as true and viewing them in the light most favorable to Plaintiff, Officer Henry's need for additional training was obvious given his prior reprimand for "incompetence" as a police officer, the numerous citizen complaints lodged against him, and the numerous internal affairs investigations that were conducted regarding him.  Accordingly, the Court finds that Plaintiffs have alleged a constitutional violation on the part of Chief Houser.

This finding, however, does not end the Court's inquiry.  In addition to arguing that Plaintiffs have failed to allege sufficient facts to state a section 1983 claim against Chief Houser as a supervisory official, Defendants argue that Chief Houser is entitled to qualified immunity.  (Defs.' Br., Dkt. [18] at 21-25 of 31.)  The Court considers this argument below.

### a.      Qualified Immunity

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." Cottone v. Jenne, II, 326 F.3d 1352, 1357 (11th Cir. 2003). Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. Id. at 1358.

Whether an official is entitled to qualified immunity is determined by a two-step inquiry: One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation." Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)). "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever

order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan,

555 U.S. 223, 241 (2009)).

As a threshold matter, Plaintiffs do not dispute that Chief Houser was

acting in a discretionary capacity for purposes of the facts alleged in the

Amended Complaint.  (Pl.'s Opp'n Br., Dkt. [20] at 16.)  And the Court has

found, as stated above, that Plaintiff has alleged sufficient facts to show a

constitutional violation on the part of Chief Houser.  The sole inquiry therefore

becomes whether the violation was clearly established at the time.

A constitutional right is clearly established "only if its contours are

'sufficiently clear that a reasonable official would understand what he is doing

violates that right.'"  Vaughan v. Cox, 316 F.3d 1210, 1212 (11th Cir. 2003)

(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  While the fact

patterns of prior cases used to show that a right is clearly established need not

be "fundamentally similar" or even "materially similar," the salient question is

whether the law at the time of the alleged violation gave officials "fair warning"

that their acts were unconstitutional.  Holmes v. Kucynda, 321 F.3d 1069, 1078

(11th Cir. 2003) (citing Hope, 536 U.S. at 740).

The inquiry of whether a constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition"; thus, the salient question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted . . . ." Battiste v. Sheriff of Broward County, 261 F. App'x 199, 202 (11th Cir. 2008) (internal quotes and citations omitted). "In most cases, fact specific precedents are necessary to give an officer fair warning of the applicable law." Id. (citing Vineyard v. Wilson, 311 F.3d 1340, 1351-52 (11th Cir. 2002)). See also Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) ("[T]he preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."). Accordingly, "[m]ore than a general legal proposition—for example, to act reasonably—is usually required[.]" Id. In some circumstances, however, a plaintiff may rely on a general rule, provided it is "obvious that the general rule applies to the specific situation in question." Id. Finally, Plaintiffs bear the burden of establishing that the constitutional right at issue was clearly established at the time of the violation. Id. at 562.

23

The Court finds that at this motion to dismiss stage of the litigation, Plaintiffs have alleged a constitutional violation that was clearly established at the time it occurred.  As stated above, the Eleventh Circuit in Belcher held that "[f]ailure to train can amount to deliberate indifference when the need for more or different training is obvious . . . such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures . . . and when the failure to train is likely to result in the violation of a constitutional right."  30 F.3d at 1397-98.  Although this is a general legal rule, it clearly applies to the facts alleged in the Amended Complaint.  Accordingly, the Court cannot rule at this stage in the litigation that Chief Houser is entitled to qualified immunity from Plaintiffs' section 1983 claims.  Defendants' Motion to Dismiss is **DENIED** as to these claims.

   2. *Sheriff Warren*

The Court reaches a different conclusion with respect to Sheriff Warren, however, and finds that Plaintiffs have failed to allege sufficient facts to establish a constitutional violation on his part.  As a threshold matter, unlike Chief Houser, Sheriff Warren did not supervise Officer Henry of the Cobb

24

County Police Department.  Therefore, Officer Henry's conduct cannot give rise to a claim against Sheriff Warren under a theory of supervisory liability.

Although Sheriff Warren did have supervisory authority over Sergeant Beasley, a Sheriff's Office deputy, Plaintiff has failed to state a section 1983 claim against Sergeant Beasley.  (See section E., infra.)  For this reason, Plaintiffs' supervisory liability claim against Sheriff Warren fails.  Moreover, even if Plaintiffs had stated a section 1983 claim against Sergeant Beasley, Plaintiffs have failed to allege a causal connection between any conduct on the part of Sheriff Warren and the acts of Sergeant Beasley.[4]  Therefore, for this additional reason, Plaintiffs' supervisory liability claims against Sheriff Warren fail.[5]  Defendants' Motion to Dismiss therefore is **GRANTED** as to Plaintiffs' section 1983 claims against Sheriff Warren in his individual capacity.

---

[4] The only allegation that attempts to do so is too vague and conclusory to state a claim: "Defendant Cobb County Sheriff's Office and Defendant Sheriff Warren are liable for Defendant Sergeant Beasley's violation of 42 U.S.C. § 1983 based on an unwritten custom, pattern and practice that allows officers to ignore written policies and receive no retribution or punishment for violating those policies by hiding behind the 'blue shield.'" (Am. Compl., Dkt. [12] ¶ 120.)

[5] In light of the Court's finding that Plaintiffs failed to establish a constitutional violation on the part of Sheriff Warren, the Court need not consider the other prong of the qualified immunity analysis, whether the violated constitutional right was clearly established at the time of the violation.

25

E.   Section 1983 claims against Officer Solon and Sergeant Beasley in their individual capacities

As stated in the Background section, supra, Plaintiffs also assert their section 1983 claims against Officer Solon and Seregant Beasley in their individual capacities.  These claims, for violation of substantive due process under the Fourteenth Amendment and the search and seizure clause of the Fourth Amendment, are based on Murdock's shooting death and on the traffic stop that immediately preceded it.  (See, e.g., Am. Compl., Dkt. [12] ¶ 115 ("By illegally and egregiously stopping, detaining, shooting, and killing [Murdock], the Defendant-Actors . . . violated [Murdock]'s Substantive Due Process Rights and Constitutional Rights, including but not limited to his Fourth and Fifth Amendment (as applied to the States through the Fourteenth Amendment) rights under the U.S. Constitution.").)  Defendants move to dismiss Plaintiffs' Fourteenth Amendment claim on grounds that Plaintiffs failed to allege that any Defendant other than Officer Henry proximately caused Murdock's death. (Defs.' Br., Dkt. [18] at 14-15.)  They move to dismiss the Fourth Amendment claim on grounds of qualified immunity.  (Id. at 17-21.)  The Court considers

26

Plaintiffs' Fourteenth Amendment substantive due process claim before turning

to Plaintiffs' Fourth Amendment claim.

        1.    *Substantive Due Process*

Plaintiffs allege that Officer Solon and Sergeant Beasley violated

Murdock's right to substantive due process as a result of Murdock's shooting

death.  As stated immediately above, Defendants move to dismiss this claim on

grounds that Plaintiffs have failed to show that any Defendant other than

Officer Henry proximately caused Murdock's death.  In response, Plaintiffs

argue as follows:

> Solon executed an unlawful traffic stop of [Murdock]'s vehicle
> without any probable cause and illegally detained [Murdock]
> without justification and had the power to stop his fellow officers'
> illegal acts, but chose not to. . . .  But for Solon's actions,
> [Murdock] would still be alive today.
>
> Beasley continued the illegal detention of [Murdock] without
> justification. . . .  Additionally, Beasley engaged in a physical
> altercation with [Murdock] despite [Murdock] having complied
> with all directives given to him by Defendants Solon and
> Beasley. . . .  It was as a result of this altercation that Defendant
> Henry fired two bullets into [Murdock]'s back and side, mortally
> wounding him. . . .  Beasley also had the power to act to stop his
> fellow officers' illegal acts, but chose not to. . . .  But for Beasley's
> actions, [Murdock] would still be alive today.

(Pls.' Opp'n Br., Dkt. [20] at 13.)

27

"A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."  Troupe v. Sarasota County, 419 F.3d 1160, 1165 (11th Cir. 2005) (citation omitted).  "Recovery of damages is limited to those injuries proved to be caused by the defendants."  Id. (citation omitted).  Moreover, where, as here, "individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken . . . where only declaratory and injunctive relief [are] sought . . . ." Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982).  Thus, for example, the Williams court explained, "[T]he critical causation issue here must be whether each individual defendant was in a position to take steps that could have averted the stabbing incident [at issue in the case] but, through callous indifference, failed to do so."  Id. at 1384.

The Court agrees with Defendants that Plaintiffs have failed to allege a sufficient causal connection between the acts of Officer Solon and Sergeant Beasley and the shooting death of Murdock.  The fact that each of these Defendants was involved in the traffic stop preceding Murdock's shooting death (and Sergeant Beasley in an altercation with Murdock) is insufficient to

28

establish liability on their parts for Murdock's death.  Moreover, Plaintiffs allege in only vague and conclusory fashion that Officer Solon and Sergeant Beasley "possessed the power to prevent" their "fellow officer's illegal acts" but "chose not to act" (Am. Compl., Dkt. [12] ¶ 27); without any supporting factual detail, this allegation is insufficient to causally connect Officer Solon or Sergeant Beasley to Murdock's death.  Defendants' Motion to Dismiss therefore is **GRANTED** as to Plaintiffs' Fourteenth Amendment claims against Officer Solon and Sergeant Beasley in their individual capacities.

2.     *Unreasonable Seizure*

Plaintiffs also challenge the traffic stop as a violation of Murdock's Fourth Amendment right against unreasonable seizures.[6]  Defendants move to dismiss this claim on grounds of qualified immunity.  (Defs.' Br., Dkt. [18] at 17-21.)

A traffic stop constitutes a "seizure" under the Fourth Amendment. United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir. 2007).  "A traffic

---

[6] To the extent Plaintiffs are seeking to assert a Fourth Amendment unreasonable seizure claim against Officer Solon and Sergeant Beasley based on Murdock's shooting death, the claim fails for the reason stated in section E.1., supra—that Plaintiff has failed to causally connect these Defendants' to Murdock's death.

stop, however, is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion [of criminal activity] in accordance with [Terry v. Ohio, 392 U.S. 1, 27 (1968)]." United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (citation omitted). When, as here, a defendant asserts the defense of qualified immunity, the issue is not whether actual probable cause or actual reasonable suspicion existed; on the contrary, the issue is whether the officer had arguable probable cause or reasonable suspicion to justify the traffic stop.  See Swint v. City of Wadley, 51 F.3d 988, 996 (11th Cir. 1995) ("[T]he question for purposes of the individual defendants' qualified immunity defense is not whether probable cause actually existed.  Instead . . . we only must ask whether . . . there was arguable probable cause.") (emphasis in original) (internal quotations and citation omitted); Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.") (citations omitted).

The Court finds, at this stage in the litigation, that Plaintiffs have alleged sufficient facts to state a claim against Officer Solon and withstand his qualified

30

immunity defense.  Plaintiffs allege in the Amended Complaint that Officer

Solon conducted the traffic stop of Murdock "[w]ithout probable cause or

reasonable suspicion to believe that [Murdock] was engaged in any criminal

activity whatsoever . . . ."  (Dkt. [12] ¶ 32.)  At the motion to dismiss stage of

the litigation, these allegations must be presumed to be true.  Madison v. Purdy,

410 F.2d 99, 102 (5th Cir. 1969) ("[A]ppellants allege they were arrested

maliciously and without probable cause, and for the purpose of the motion to

dismiss this allegation of fact must be presumed to be true . . . .").[7]  Accepting

these and the other allegations of the Amended Complaint as true, Officer Solon

did not have arguable probable cause or arguable reasonable suspicion to justify

the traffic stop.  Plaintiffs thus have alleged an unreasonable seizure on the part

of Officer Solon in violation of Murdock's rights under the Fourth Amendment.

The Court further finds that Murdock's Fourth Amendment rights were

clearly established at the time of the traffic stop.  The cases cited above clearly

establish that a traffic stop conducted without even arguable probable cause to

believe a traffic violation has occurred or reasonable suspicion of criminal

---

[7] Decisions of the former Fifth Circuit Court of Appeals handed down before
October 1, 1981 are binding on this Court.  Bonnard v. City of Pritchard, 661 F.2d
1206, 1209 (11th Cir. 1981).

activity is unreasonable under the Fourth Amendment.  Accordingly, at this stage in the litigation, the Court cannot find that Officer Solon is entitled to qualified immunity against Plaintiffs' Fourth Amendment claim.  Defendants' Motion to Dismiss therefore is **DENIED** as to Plaintiff's Fourth Amendment claim against Officer Solon in his individual capacity.

The Court finds, however, that Plaintiffs have failed to state a Fourth Amendment claim against Sergeant Beasley.  The allegations of the Amended Complaint show that Sergeant Beasley arrived on the scene to assist Officer Solon after the latter initiated the traffic stop.  (Dkt. [12] ¶ 34.)  After Sergeant Beasley's arrival, Officer Solon asked him to detain [Murdock] so that Officer Solon could confer with Murdock's friend.  (Id. ¶ 35.)  Plaintiffs allege Murdock was detained despite having committed no crime.  (Id. ¶ 36.) Plaintiffs do not allege, however, that Sergeant Beasley knew the traffic stop had been conducted in the absence of probable cause or reasonable suspicion. Indeed, Plaintiffs do not allege any facts regarding Sergeant Beasley's knowledge or state of mind, only that he arrived on the scene after the traffic stop had been commenced to assist another officer.  Accordingly, absent any factual allegation that Sergeant Beasley lacked arguable probable cause or

AO 72A
(Rev.8/82)

reasonable suspicion to justify the continued detention of Murdock, Plaintiffs

have failed to state a Fourth Amendment claim against Sergeant Beasley.  Cf.

Shepard v. Hallandale Beach Police Dep't, 398 F. App'x 480, 483 (11th Cir.

2010) ("This Court has concluded that assisting officers are entitled to qualified

immunity when there is no indication that they acted unreasonably in following

the lead of a primary officer or that they knew or should have known that their

conduct might result in a Fourth Amendment violation, even when the primary

officer is not entitled to qualified immunity.").  Defendants' Motion to Dismiss

therefore is **GRANTED** with respect to Plaintiffs' Fourth Amendment claim

against Sergeant Beasley in his individual capacity.

> F.   State law claims against Cobb County and Sheriff Warren, Chief Houser, Sergeant Beasley, and Officer Solon in their official capacities

Defendants move to dismiss Plaintiff's state law claims against Cobb

County and Sheriff Warren, Chief Houser, Sergeant Beasley, and Officer Solon

in their official capacities on grounds of sovereign immunity under the Georgia

Constitution.  (Defs.' Br., Dkt. [18] at 19-21 of 31.)  Plaintiffs concede these

claims.  (See Pls.' Opp'n Br., Dkt. [20] at 14 ("Plaintiffs agree that Cobb

County and the individual Defendants, in their official capacities only, have

33

sovereign immunity as against Plaintiffs' state law claims . . . .").)  Defendants'

Motion to Dismiss therefore is **GRANTED** as to these claims.

> G.   State law claims against Sheriff Warren, Chief Houser, Sergeant Beasley, and Officer Solon in their individual capacities

Defendants move to dismiss Plaintiffs' state law claims against Sheriff

Warren, Chief Houser, Sergeant Beasley, and Officer Solon in their individual

capacities on grounds of official immunity.  (Defs.' Br., Dkt. [18] at 26-28 of

31.)  The state constitutional provision governing official immunity provides as

follows:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. . . .

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the

term "official functions" refers to "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts."  Gilbert, 452 S.E.2d at 483.  Accordingly, under Georgia law, "a public

officer or employee may be personally liable only for ministerial acts

34

negligently performed or acts [ministerial or discretionary] performed with malice or an intent to injure." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001). "In other words, public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." Carter v. Glenn, 548 S.E.2d 110, 112 (Ga. Ct. App. 2001).

In support of their contention that official immunity bars Plaintiffs' state law claims, Defendants argue, "All of the actions of Defendants Houser, Warren, Solon, and Beasley were discretionary and Plaintiffs do not allege facts that would show that they were products of 'willfulness, malice, or corruption.'" (Defs.' Br., Dkt. [18] at 28 of 31.) In response, Plaintiffs argue that Officer Solon and Sergeant Beasley acted with actual malice and, therefore, are not entitled to official immunity. (Pls.' Opp'n Br., Dkt. [20] at 23-24.) (Plaintiffs do not dispute that Officer Solon and Sergeant Beasley were performing discretionary functions. (Id. at 23.).) They further argue that Sheriff Warren and Chief Houser were performing ministerial, rather than discretionary, functions and, therefore, may be held liable on the basis of negligence. (Id.)

35

The Court agrees with Defendants that Officer Solon and Sergeant Beasley are entitled to official immunity from Plaintiffs' state law claims because Plaintiffs have not alleged that they acted with malice (and do not dispute that they acted in a discretionary capacity).  Plaintiff argues,

> [The Amended Complaint] sets forth numerous facts . . . from which a jury could conclude that Solon lacked <u>any</u> articulable and reasonable suspicion that [Murdock] committed a crime such that Solon did not have even <u>arguable</u> probable cause to stop and detain [Murdock], and that Beasley assisted with and perpetuated this intrusion with full knowledge that the officers lacked probable cause.  This is a "deliberate intent to do wrong" such that Solon and Beasley are not entitled to official immunity at this time.

(Pls.' Opp'n Br., Dkt. [20] at 23-24 (emphasis in original).)  The Court disagrees.

Plaintiffs are correct that "actual malice" means "a deliberate intent do wrong."  <u>Reed v. DeKalb County</u>, 589 S.E.2d 584, 588 (Ga. Ct. App. 2003).  <u>See also</u> <u>Adams v. Hazelwood</u>, 520 S.E.2d 896, 898 (Ga. Ct. App. 1999) ("[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act. . . .  Such act may be accomplished with or without ill will and whether or not injury was intended.") (citation omitted).  The allegations of the Amended Complaint, however, do not show that Officer Solon or Sergeant

36

Beasley acted with the deliberate intent to commit a wrongful act.  Accordingly, they are entitled to official immunity from Plaintiffs' state law claims.[8] Defendants' Motion to Dismiss therefore is **GRANTED** as to Plaintiffs' state law claims against Officer Solon and Sergeant Beasley in their individual capacities.

The Court also agrees with Defendants that Chief Houser and Sheriff Warren were acting in discretionary capacities and, therefore, are entitled to official immunity, as the Amended Complaint does not allege they were acting with malice.  "The decision of whether acts of a public official are ministerial or discretionary is determined by the facts of the particular case." Carter, 548 S.E.2d at 112.  "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Id. at 112-13.  "A discretionary act,

---

[8] Plaintiffs argue that "the assertion by the plaintiff of the defendant's intent to use a weapon on the victim, with clearly injurious consequences and without justification is sufficient to describe a deliberate intention to do a wrongful act and establish (at least in the context of a motion to dismiss) actual malice under Georgia law." (Pls.' Opp'n Br., Dkt. [20] at 23 (citing Harper v. Perkins, 459 F. App'x 822, 828 (11th Cir. 2012).)  The Court agrees.  However, although such allegations may have been raised against Officer Henry, no such allegations have been made against Officer Solon or Sergeant Beasley.

however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. at 113.

The Georgia Court of Appeals thus has held that "the act of establishing a policy in the first place is discretionary," while "the acts of following established policies of inspecting and monitoring are ministerial." Id. at 113. With particular relevance to the facts of this case, the court has also held the following:

> The operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function of the municipality as opposed to a ministerial, proprietary, or administratively routine function. Liability may be imposed as a result of the exercise of such a discretionary function only when the acts complained of are done within the scope of the officer's authority and with wilfulness, malice or corruption.

Id. (internal quotes and citation omitted). Thus, where a plaintiff alleged that the chief of police had negligently hired and retained a police officer accused of rape, the chief was entitled to official immunity as a matter of law because the plaintiff had failed to show "wilfulness, malice or corruption." Id.

38

The Court agrees with Defendants that Chief Houser and Sheriff Warren were performing discretionary functions for purposes of the facts alleged in the Amended Complaint.  The foregoing authority is clear that decisions regarding whether to hire or retain a police officer (or sheriff's deputy) and what degree of training and supervision is necessary are discretionary in nature rather than ministerial.  Thus, Chief Houser and Sheriff Warren are entitled to official immunity from Plaintiffs' state law claims unless they acted with actual malice.  Because the Amended Complaint does not allege facts suggesting actual malice on the part of either, they are entitled to official immunity.[9]  Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' state law claims against Chief Houser and Sheriff Warren in their individual capacities.

---

[9] Howard v. City of Columbus, 521 S.E.2d 51 (Ga. Ct. App. 1999), relied on by Plaintiffs, is factually inapposite and does not compel a contrary result.  In Howard, the Georgia Court of Appeals held that "supervision, including adequate training and enforcement of all policies, practices, and protocol, are ministerial in nature . . . ."  (Id. at 66 (emphasis added).)  Thus, "Providing adequate medical attention for inmates under defendants' custody and control is a ministerial act by the sheriff and his or her deputies . . . because medical care is a fundamental right and is not discretionary . . . ."  Id. (citations omitted).  The court continued, "In contrast, the determination of what medical treatment to provide is an act of discretion subject to official immunity."  Id. (emphasis in original).  The Howard court found that the defendants were not entitled to official immunity when they "failed to act in following clearly set out guidelines, all ministerial acts requiring no exercise of deliberation and judgment."  Id. at 67 (emphasis added).

39

## Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss [18] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** with respect to (1) Plaintiffs' claims against the Cobb County Police Department and Cobb County Sheriff's Department, which Defendants are **DISMISSED**; (2) Plaintiffs' section 1983 claims against Sheriff Warren and Sergeant Beasley in their official capacities; (3) Plaintiffs' section 1983 claims against Sheriff Warren and Sergeant Beasley in their individual capacities; (4) Plaintiffs' section 1983 Fourteenth Amendment claim against Officer Solon in his individual capacity; (5) Plaintiffs' state law claims against Cobb County, Sheriff Warren, Chief Houser, Sergeant Bealsey and Officer Solon in their official capacities; and, finally, (6) Plaintiffs' state law claims against Sheriff Warren, Chief Houser, Sergeant Beasley, and Officer Solon in their individual capacities.

Defendants' Motion to Dismiss is **DENIED** with respect to (1) Plaintiffs' section 1983 claims against Cobb County and Chief Houser and Officer Solon in their official capacities; (2) Plaintiffs' section 1983 claims against Chief

40

Houser in his individual capacity; and (3) Plaintiffs' section 1983 Fourth

Amendment claim against Officer Solon in his individual capacity.


     **SO ORDERED**, this  17th  day of May, 2013.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

41